UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JACQUELINE T[1].,                )
                                  )
                 Plaintiff,       )
                                  )
          v.                      )     No. 1:21-cv-02456-DLP-JRS
                                  )
KILOLO KIJAKAZI,                  )
                                  )
                 Defendant.       )

## ORDER

Plaintiff Jacqueline T. requests judicial review of the denial by the

Commissioner of the Social Security Administration ("Commissioner") of her

application for Disability Insurance Benefits ("DIB") and Disabled Widow's Benefits

("DWB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d),

1383(c)(3).  For the reasons set forth below, the Court hereby **REVERSES** the

ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for

further proceedings.

## I.   PROCEDURAL HISTORY

On November 14, 2019, Jacqueline protectively filed an application for DBI

and DWB, alleging disability beginning July 1, 2018. (Dkt. 7-2 at 11, R. 10).

Jacqueline's application alleged disability resulting from nerves, depression,

arthritis, ulcerative colitis, and high blood pressure. (Dkt. 7-6 at 21, R. 253). The

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern
District of Indiana has adopted the recommendations put forth by the Court Administration and
Case Management Committee of the Administrative Office of the United States Courts regarding the
practice of using only the first name and last initial of any non-government parties in Social Security
opinions. The Undersigned has elected to implement that practice in this Order.

Social Security Administration ("SSA") denied Jacqueline's claim initially on January 28, 2020, (Dkt. 7-3 at 14-15, R. 74-75), and on reconsideration on September 30, 2020. (Dkt. 7-3 at 44-45, R. 104-05). Jacqueline made a written request for a hearing, (Dkt. 7-4 at 28, R. 132), which was granted.

On February 18, 2021, a hearing was held before Administrative Law Judge ("ALJ") Shelette Veal, where Jacqueline, her counsel, and vocational expert Stephanie Archer all appeared telephonically. (Dkt. 7-2 at 34, R. 33). On March 12, 2021, ALJ Veal issued an unfavorable decision finding that Jacqueline was not disabled. (Dkt. 20-2 at 11-25, R. 10-24). On July 30, 2021, the Appeals Council denied Jacqueline's request for review, making the ALJ's decision final. (Dkt. 7-2 at 2-5, R. 1-4). Jacqueline now seeks judicial review of the ALJ's decision denying benefits. *See* 42 U.S.C. § 1383(c)(3).

## II.   STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). To meet this definition, a claimant's impairments must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she

cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy.[2] 42 U.S.C. § 1382c(a)(3)(B).

The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v).[3] The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform [her] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. §§ 404.1520; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20

---

[2] As the ALJ noted, the other issues are whether Jacqueline qualifies for Disabled Widow's Benefits, and the question is "whether the claimant is the widow of the deceased worker, has attained the age of 50, is unmarried (unless one of the exceptions in 20 CFR 404.335(e) apply), and has a disability that began before the end of the prescribed period. The prescribed period ends with the month before the month in which the claimant attains age 60, or, if earlier, either 7 years after the worker's death or 7 years after the widow was last entitled to survivor's benefits, whichever is later." (Dkt. 7-2 at 12, R. 11).

[3] The determination of disability for purposes of disabled widow's benefits is the same as that for determining disability for purposes of disability insurance benefits and follows the familiar five-step sequential evaluation. See 20 C.F.R. §§ 404.335(c), 404.1504. The Court will exclusively reference the statutes and regulations for DIB in this opinion.

C.F.R. §§ 404.1520 (A negative answer at any point, other than steps three and five, terminates the inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id.* at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and, if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id*. The Commissioner must then establish that the claimant—in light of her age, education, job experience, and residual functional capacity to work—is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to

determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Jacqueline is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to h[er] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford*, 227 F.3d at 872.

## III.   BACKGROUND

### A. Factual Background

Jacqueline was fifty-six years old as of her alleged onset date of July 1, 2018. (*See* Dkt. 7-2 at 38, R. 56; 7-6 at 17, R. 249). She has a high school education. (Dkt. 7-6 at 22, R. 254). She has past relevant work as a home health aide, shuttle bus driver, forklift driver, and lawnmower assembler. (Dkt. 7-2 at 56-57, R. 55-56).

### B. ALJ Decision

In determining whether Jacqueline qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that Jacqueline was not disabled. (Dkt. 7-2 at 11-25, R. 10-24). At Step One, the ALJ found that Jacqueline had not engaged in substantial gainful activity since her alleged onset date of July 1, 2018[4]. (Id. at 14, R. 13).

---

[4] The ALJ also determined that Jacqueline was previously found to be the unmarried widow of the deceased insured worker and had attained the age of 50, thereby meeting the non-disability

At Step Two, the ALJ found that Jacqueline had the following severe impairments: arthritis, depression, anxiety, and post-traumatic stress disorder. (Id.). The ALJ found that Jacqueline's ulcerative colitis, high blood pressure, and skin cancer were not severe. (Id.).

At Step Three, the ALJ found that Jacqueline's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, considering Listings 1.02 (major dysfunction of a joint), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). (Dkt. 7-2 at 14-17, R. 13-16). When considering the "paragraph B" criteria, the ALJ found that Jacqueline had mild limitations in understanding, remembering, or applying information; interacting with others; and adapting or managing oneself; and moderate limitations in concentrating, persisting, or maintaining pace. (Id. at 16-17, R. 15-16). The ALJ also found the "paragraph C" criteria not satisfied. (Id. at 17, R. 16).

After Step Three but before Step Four, the ALJ found that Jacqueline had the residual functional capacity ("RFC") to perform "medium work," as defined in 20 C.F.R. § 404.1567(c), with the following limitations: lifting and carrying fifty pounds occasionally and twenty-five pounds frequently; standing and/or walking for six hours in an eight-hour workday; sitting for six hours in an eight-hour workday;

---

requirements for DWB. (Dkt. 7-2 at 14, R. 13). Jacqueline's prescribed period for DWB ends on December 31, 2021. (Id.).

perform simple, routine, and repetitive tasks; maintain sufficient attention and concentration to perform these tasks with reasonable pace and persistence. (Dkt. 7-2 at 17, R. 16).

At Step Four, the ALJ concluded that Jacqueline was capable of performing her past relevant work as a lawnmower assembler. (Dkt. 7-2 at 24-25, R. 23-24). The ALJ thus concluded that Jacqueline was not disabled. (Id. at 25, R. 24).

## IV.   ANALYSIS

Jacqueline challenges the ALJ's decision on three bases.[5] First, Jacqueline contends that the ALJ erred by failing to include any social limitations in the RFC. (Dkt. 13 at 6-10). Second, Jacqueline argues that the ALJ failed to adequately evaluate the medical opinion evidence. (Dkt. 13 at 10-18). Third, Jacqueline asserts that the ALJ conducted a faulty 16-3p analysis of her subjective symptoms. (Dkt. 13 at 18-20). The Court will address each of Jacqueline's arguments, in turn, below.

### A. Social Limitations

First, Plaintiff argues that the ALJ erred by failing to include all social limitations assessed by the state agency reviewing psychologist and consultative psychological examiner.[6] (Dkt. 13 at 7-10, 14-15). Plaintiff maintains that the ALJ found the opinions of the state agency reviewing psychologist and consultative

---

[5] In her reply brief, Plaintiff abandons her fourth argument related to the constitutional authority of the ALJ's decision. (Dkt. 17).
[6] Plaintiff lays out the argument related to the reviewing psychologists and consultative psychological examiner in two separate sections, but the Undersigned will consider them together.

psychological examiner persuasive and moderately persuasive, respectively, but failed to include their recommended social limitations in the RFC. (Id.).

"An ALJ is required to consider a consultative examiner's opinion and explain the weight given to such an opinion in [her] decision." *Keith R. v. Kijakazi*, No. 20 C 4853, 2022 WL 580801, at *4 (N.D. Ill. Feb. 25, 2022) (citing *Lucio v. Barnhart*, No. 03 C 7078, 2004 WL 1433637, at *11 (N.D. Ill. June 22, 2004)). While an ALJ may discount the opinion of a consultative examiner, she must provide good reasons for doing so. *Johnny T. v. Saul*, No. 17 C 8671, 2020 WL 108442, at *5 (N.D. Ill. Jan. 9, 2020) (citing *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)). "Further, an ALJ can give less weight to a consultative doctor's opinion if it is internally inconsistent or inconsistent with the other substantial evidence in the record as long as she articulates her reasons for giving the opinion less weight." *Sandra P. v. Kijakazi*, No. 20 C 1771, 2022 WL 488742, at *3 (N.D. Ill. Feb. 17, 2022) (citing *Hall v. Astrue*, 489 F. App'x 956, 958 (7th Cir. 2012) (internal quotations omitted)).

On September 26, 2020, Dr. Robert J. Kurzhals conducted a psychological assessment of Jacqueline at the request of the SSA. (Dkt. 7-7 at 287-91, R. 648-52). Dr. Kurzhals took a detailed history, conducted various testing, and offered conclusions about Jacqueline's limitations, specifically noting that her "ability to relate to coworkers, supervisors, and the public is estimated to be moderately to markedly impaired, due to mood instability, racing thoughts, and tendency to ramble. (Dkt. 7-7 at 291, R. 652). The ALJ considered Dr. Kurzhals' opinion as follows:

The psychological consultative examiner, Dr. Kurzhals, also provided an opinion after he examined the claimant in September 2020. He opined that her ability to understand and remember simple instructions was mildly to moderately impaired due to concentration problems and racing thoughts. He stated that her ability to understand and remember complex instructions was markedly impaired. Socially, he noted that her ability to relate to others in the workplace was moderately to markedly impaired due to mood instability, racing thoughts, and her tendency to ramble. Overall, Dr. Kurzhals offered a moderately persuasive opinion. He was able to examine the claimant. However, he relied too heavily on her subjective history, rather than true objective findings. She clearly had issues with attention, which he addressed in his discussion of her ability to perform simple vs. complex instructions. However, she was still cooperative, and she was able to relate with the examiner. Dr. Kurzhals opined that she would have moderate to marked difficulties in interacting with others due to her mood instability and racing thoughts, but he did not consider her ability to engage in the examination, nor did he consider her relatively conservative treatment history, despite allegations of mood swings.

(Dkt. 7-2 at 21, R. 20) (internal citations omitted). Although the ALJ found Dr. Kurzhals' opinion to be moderately persuasive, she discounted this opinion for three reasons: (1) relying too heavily on subjective history; (2) did not consider Jacqueline's ability to engage in the examination; and (3) did not consider Jacqueline's conservative treatment history. (Id.).

First, although the ALJ concludes that Dr. Kurzhals relied too heavily on Jacqueline's subjective history, Dr. Kurzhals appears to have considered her behavior, test performance, mental status, and treatment history, in addition to her subjective complaints. (Dkt. 7-7 at 287-91, R. 648-52). Nevertheless, the Commissioner maintains that it was proper for the ALJ to discount Dr. Kurzhals' opinion because the Seventh Circuit has upheld ALJ decisions where physicians' opinions appear to rely too heavily on subjective symptom allegations. (Dkt. 14 at

18-19). The cases cited by the Commissioner, however, found it appropriate to discount physicians' opinions as they related to a claimant's physical impairments, not mental impairments, as is the case here. By contrast, "[t]hrough *Aurand v. Colvin*, 654 Fed. App'x. 831 (7th Cir. 2016) and *Price v. Colvin*, 794 F.3d 836 (7th Cir. 2015), the Seventh Circuit has determined that psychological and psychiatric assessments are normally based on the patient's subjective complaints, and that it would be illogical to dismiss the professional opinion of a psychiatrist or a psychologist simply because that opinion draws from the patient's reported symptoms." *Lori P. v. Saul*, No. 1:19-cv-00875-DLP-SEB, 2020 WL 967107, at *12 (S.D. Ind. Feb. 28, 2020); *Elizabeth N. W. v. Kijakazi*, No. 3:21-CV-008, 2022 WL 278661, at *4 (N.D. Ind. Jan. 31, 2022) ("How else is a psychologist to evaluate a patient's mental illness, other than talk to [her]? Depression does not show on an x-ray.") (quoting *Worzalla v. Barnhart*, 311 F. Supp. 2d 782, 797 (E.D. Wis. 2004)).

Second, Dr. Kurzhals did consider Jacqueline's level of engagement in the examination, because he acknowledged her behavior at various points of his opinion and in his summary section explained:

> Ms. Thurston was difficult to interview as her speech was pressured and she tended to ramble and was difficult to redirect. She provided a confusing history. . . . She complained of racing thoughts which was consistent with her presentation.

(Dkt. 7-7 at 290-91, R. 651-52). It is unclear how the ALJ concluded that Dr. Kurzhals did not consider Jacqueline's ability to engage in the examination, when the ALJ referenced these exact findings in the RFC analysis. (Dkt. 7-2 at 20, R. 19).

On the Court's review, Dr. Kurzhals appears to have specifically noted Jacqueline's behavior at and engagement in the examination. (Dkt. 7-7 at 287-91, R. 648-52).

Third, although the ALJ concluded that Dr. Kurzhals did not consider Jacqueline's "relatively conservative treatment history," Dr. Kurzhals' opinion indicates that he was provided with and reviewed records from her primary care physician, who she saw for evaluation and treatment of her mental impairments. (Dkt. 7-7 at 287, R. 648). Dr. Kurzhals also noted her hospitalization and counseling in the summer of 2019. (Dkt. 7-2 at 20, R. 19). Moreover, it is not clear how the ALJ concluded that Jacqueline had a conservative treatment history for her mental impairments, given that she had to be hospitalized for five days in 2019 for suicidal ideation with a plan to overdose, attended mental health therapy through Centerstone, and required multiple medications to address her mental health symptoms. (Dkt. 7-2 at 19-21, R. 18-20). The Court is unsure what additional treatment the ALJ would require for Jacqueline's mental impairments. The ALJ's mere characterization of Plaintiff's treatment as conservative, without identifying what more aggressive treatments would have been appropriate to undertake, fails to apprise the Court of why it matters for this case. *Corey Z. v. Saul*, No. 18 CV 50219, 2019 WL 6327427, at *8 (N.D. Ill. Nov. 26, 2019) (ALJ erred by concluding that claimant's treatment was conservative without providing any explanation or support and by not relying on an expert opinion); *Thomas v. Colvin*, No. 13 C 3686, 2015 WL 515240, at *4 (N.D. Ill. Feb. 6, 2015) (ALJ erred by not identifying other more aggressive treatments and failing to fully discuss claimant's medications). As

a result, the three reasons the ALJ provided for discounting Dr. Kurzhals' opinion are unavailing, especially because Dr. Kurzhals' conclusion that Jacqueline would be moderately to markedly impaired in her ability to interact with others appears to be consistent with the state agency reviewing psychologist's opinion from Dr. Kenneth Neville that Jacqueline would only be able to interact superficially with coworkers, supervisors, and the public. (Dkt. 7-3 at 27, R. 87).

The Commissioner argues that even if the ALJ erred, that error is harmless because the Plaintiff has not shown how a social limitation will affect the ALJ's conclusion that she can perform her past relevant work as a lawnmower assembler. (Dkt. 14 at 15-16). The Court cannot agree that the error was harmless because the Dictionary of Occupational Titles does not address the required social limitations for that particular position, (Assembler, Motor Vehicle, DICOT 806.684-010), and, perhaps more importantly, although the ALJ found that Jacqueline had a mild limitation in interacting with others, the ALJ did not ask the vocational expert any questions or present any hypotheticals that included social limitations. (Dkt. 7-2 at 16, 56-61, R. 15, 55-60). Thus, it would be impossible for either the Plaintiff or this Court to determine what effect the inclusion of social limitations would have on the Plaintiff's potential job base without any analysis from the ALJ or vocational expert.

As noted previously, this error is compounded by the fact that Dr. Kurzhals' opinion is supported by the opinion of state agency psychologist Dr. Neville, who similarly found that Jacqueline would require specific social limitations. On

13

September 29, 2020, state agency reviewing psychologist Dr. Kenneth Neville

completed a Psychiatric Review Technique ("PRT") and Mental Residual Functional

Capacity Assessment ("MRFC") for Jacqueline. (Dkt. 7-3 at 23-27, R. 83-87). Dr.

Neville indicated that Jacqueline suffered from an anxiety disorder. (Id. at 24-25, R.

84-85). He also noted that Jacqueline's statements about her symptoms, including

social interaction limitations, were supported by the objective medical evidence

alone. (Id. at 24-25, R. 84-85). Dr. Neville concluded by finding that Jacqueline "can

relate on a superficial and ongoing basis with co-workers and supervisors." (Id. at

27, R. 87).

> The ALJ considered Dr. Neville's opinion as follows:
>
> Kenneth Neville, Ph.D. acknowledged that the claimant had a severe
> mental impairment. He stated that she was still able to understand,
> remember, and carry out detailed, but not complex tasks, as well as
> relate on a superficial and ongoing basis with coworkers and
> supervisors. Overall, th[is] opinion[] [is] persuasive. [Dr. Neville was]
> able to review evidence of record, including findings form (sic) the
> consultative examinations. [Dr. Neville] provided [an] impartial
> opinion[]. Given evidence submitted at [the] hearing level, the
> undersigned finds that the claimant has been a little more limited in her
> mental functioning.

(Dkt. 7-2 at 22, R. 21) (internal citations omitted). As the Plaintiff points out, the

ALJ acknowledged Dr. Neville's opinion regarding social limitations and found that

opinion persuasive. (Dkt. 13 at 7-9 (citing Dkt. 7-2 at 22, R. 21)). However, without

explanation, the ALJ went on to include no social limitations in the assigned RFC –

this omission prevents the Court from conducting any meaningful review. The ALJ

may well have decided after reviewing the evidence that no social limitations were

warranted based on the record, but she was required to explain why. *Kelli M. v. Saul*, No. 1:20-cv-01731-DLP-JRS, 2021 WL 4236802, at *7 (S.D. Ind. Sept. 17, 2021); *see also Passig v. Colvin*, 224 F. Supp. 3d 672, 682 (S.D. Ill. 2016); *Keith R. v. Saul*, No. 19 C 868, 2021 WL 308885, at *4 (N.D. Ill. Jan. 29, 2021) (citing *Lothridge*, 984 F.3d at 1233). Moreover, in a situation where an ALJ does not adopt a limitation from a state agency physician, the Court is looking for a good reason why. *See Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020) (citing *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014)) (rejecting the opinion of an agency's doctor that supports a disability finding is "unusual" and "can be expected to cause a reviewing court to take notice and await a good explanation."); *see also Zima v. Comm'r of Soc. Sec.*, No. 3:20-CV-486 JD, 2021 WL 4237357, at *3 (N.D. Ind. Sept. 16, 2021) (quoting *Garcia v. Colvin*, 741 F.3d 758, 761 (7th Cir. 2013)) (when an ALJ rejects an agency doctor's finding, a good explanation is deserved because the agency's own doctor is "unlikely . . . to exaggerate an applicant's disability.") The ALJ provided no explanation of her decision not to adopt the findings of a state agency opinion she found persuasive, rendering meaningful review impossible.

Accordingly, for the ALJ's failure to explain why she did not adopt Dr. Neville's opinion regarding social limitations despite finding it persuasive, along with the ALJ's inadequate reasons for discounting Dr. Kurzhals' similar opinion, the Court finds that this matter must be remanded for further consideration of Jacqueline's social limitations.

15

### B. Physical Consultative Examiner

Next, Plaintiff argues that the ALJ erred by failing to adopt the limitations assigned by the consultative physical examiner, Dr. Kurt Jacobs. (Dkt. 13 at 13-17). Specifically, Jacqueline contends that although the ALJ found that Dr. Jacobs conducted a thorough evaluation and provided thorough examination notes, ALJ failed to adequately explain why she did not adopt his recommended limitation of no lifting or carrying more than 10 pounds occasionally. (Id.).

On September 16, 2020, Dr. Jacobs conducted a physical examination of Jacqueline at the request of the SSA. (Dkt. 7-7 at 282-85, R. 643-46). Plaintiff reported, in relevant part, having arthritis and difficulties on the right side of the body that affected the use of the right hand and arm. (Id. at 282, R. 643). Dr. Jacobs noted that Jacqueline was able to button, zip, and pick up coins with difficulty with both hands and that she had sensation loss in the hands. (Id. at 284, R. 645). Dr. Jacobs's medical source statement found that Jacqueline is able to handle objects with moderate difficulty, can stand/walk up to six hours in an eight hour workday, sitting most of the time, and could lift/carry 10 pounds on an occasional basis. (Id.).

The ALJ considered Dr. Jacobs's opinion as follows:

> After examining the claimant in September 2020, the consultative examiner, Dr. Jacobs, provided a very brief opinion. He opined that she was able to stand and walk for up to six hours in a workday, as well as sit most of the time. He suggested that she could lift and carry ten pounds on an occasional basis, as well as handle objects with moderate difficulty. Overall, this opinion is only moderately persuasive. Dr. Jacobs was able to examine the claimant, and he provided thorough examination notes. However, he ultimately provided a conclusory and vague opinion statement. He acknowledged that the claimant did not

16

> have significant limitations in her ability to stand or walk, but he then suggested that she could only lift up to ten pounds occasionally. He did not necessarily explain his opinion. The claimant did have some limitation of strength, but it was throughout multiple areas and it was symmetric. She had loss of sensation in her hands, but she retained normal manipulative abilities. While the claimant has likely had some limitations as a result of musculoskeletal pain, Dr. Jacobs actual opinion is just not that persuasive.

(Dkt. 7-2 at 21, R. 20) (internal citations omitted).

Although Plaintiff claims that the ALJ should have adopted Dr. Jacobs's limitation regarding lifting and carrying, the ALJ supported her decision not to adopt that limitation in several ways. The ALJ noted that Dr. Jacobs provided little to no explanation of his opinions, instead only listing the objective medical evidence and his conclusions. (Dkt. 7-2 at 21, R. 20). The ALJ also noted that Plaintiff retained normal manipulative abilities despite a loss of sensation in her hands. (Id.). The ALJ also considered the opinion of state agency reviewing physician Dr. J.V. Corcoran that Jacqueline was able to perform a range of medium work and found it persuasive because it was supported by the record and that additional treatment notes showed no worsening of Jacqueline's physical impairments. (Id. at 21-22, R. 20-21). Finally, the ALJ referenced when Jacqueline asked her primary care physician to complete disability paperwork, Dr. Loman refused because the arthritis in Jacqueline arms was not at a level at which he could recommend disability. (Dkt. 7-2 at 19, 22, R. 18, 21 (citing Dkt. 7-7 at 314-18, R. 675-79). As such, the Court finds that the ALJ presented sufficient evidence to support her

decision not to adopt all of Dr. Jacobs's recommended limitations. Thus, remand is not appropriate on this issue.

### C. Remaining Argument

Plaintiff also argues that the ALJ erred in analyzing Jacqueline's subjective symptoms. Because this matter is being remanded on the issue of social limitations, the Undersigned declines to consider Plaintiff's remaining argument. On remand, the ALJ will have the opportunity, if appropriate, to re-evaluate Jacqueline's subjective symptoms.

### V.   CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings. Final judgment will issue accordingly.

So ORDERED.

Date: 9/28/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email